IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRAVIS MICHAEL EASTER,

        Petitioner,

    v.

STEVE FRANKE,

        Respondent.

Case No. 2:11-cv-00906-JE

FINDINGS AND RECOMMENDATION

Tonia Moro
Attorney at Law
19 South Orange Street
Medford, Oregon 97501,
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

        Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Kristen E. Boyd, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

        Attorneys for Respondent

1 – FINDINGS AND RECOMMENDATION

JELDERKS, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Sexual Abuse. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#39) should be denied.

## BACKGROUND

On June 24, 2004, petitioner was indicted on two counts of Sexual Abuse in the First Degree for two different incidents involving an 11-year-old girl, TR. On July 13, 2004, petitioner was indicted on two more counts of Sexual Abuse in the First Degree pertaining to separate incidents involving AH, a thirteen-year-old girl. Both girls were friends of petitioner's daughter, AE.

The cases involving TR and AH were consolidated for trial, and the defense's theory of the case was that AH and TR fabricated the allegations of abuse because they were angry with petitioner's daughter, AE. During the trial, AH's father testified as follows:

D.A.:     Can you tell us about [AH's] demeanor when
          she told you [about the abuse]?

Witness:  She was – you could barely understand what
          she was saying, she was crying, you know.
          What's a father to do?

D.A.:     Did it take you a minute to understand?

Witness:  It took – yeah. I had to soak it in. I
          couldn't believe it at first, I was just like
          – but my daughter doesn't lie. Why would –

                    why would she say something like that if it
                    ain't true.

D.A.:      You said your daughter doesn't lie?

Witness:   She does not lie.

Respondent's Exhibit 103, pp 158-159.    This testimony was

admitted without objection from petitioner's attorney.

    AH's mother testified shortly thereafter that she did not

believe her daughter was making up the allegations of abuse:

D.A:       Do you know of any reason why your daughter
           would make this up?

Witness:   No.

Defense:   Your Honor, objection, speculation.

Court:     Overruled.  He asked if she knew of any reason, okay,
           so --

Witness:   No, there's not.

D.A.:      Oh, I'm sorry, Ms. [H].

Court:     All right.  Go ahead.  You may answer.

Witness:   No, there's not.

Court:     All right.  All right.

Witness:   There's no reason.

D.A.:      There's not?

Witness:   Hmm-mmm.

Defense:   No questions.

*Id* at 175.

    The jury returned guilty verdicts as to all four charges,

and the trial court sentenced petitioner to four Measure 11

sentences of 75 months each, but ran the sentences concurrently

as to each of the two victims resulting in a total sentence of 150 months in prison.  Respondent's Exhibit 104, pp. 16-18.

Petitioner took a direct appeal wherein he argued that the trial court erred when it overruled his objection to the testimony from AH's mother where she improperly vouched for the credibility of her daughter.  Respondent's Exhibit 105. Respondent asserted that the claim had not been preserved in the trial court, and even if it had, the claim lacked merit. Respondent's Exhibit 106.  The Oregon Court of Appeals affirmed the trial court's decision without opinion, and the Oregon Supreme Court denied review.  *State v. Easter*, 215 Or. App. 112, 168 P.3d 338 (2007), *rev. denied*, 344 Or. 43, 178 P.3d 247 (2008).

Petitioner next filed for post-conviction relief ("PCR") in Umatilla County arguing, in relevant part, that the PCR trial court erred in denying relief where trial counsel had failed to object to improper and prejudicial evidence in the form of improper vouching by AH's mother.  The PCR trial court denied relief.  Respondent's Exhibit 117.  The Oregon Court of Appeals affirmed the PCR trial court's decision in a written opinion wherein it determined that AH's mother's testimony did not constitute improper vouching. *Easter v. Mills*, 239 Or. App. 209, 243 P.3d 1212 (2010).  Specifically, it concluded that the testimony at issue could "be distinguished in a significant way" from improper vouching insofar as "AH's mother was not asked whether she believed that AH was telling the truth (nor did her answer reveal whether she believed that AH was telling the

truth). Rather, she was asked if she knew of any motive AH would have to lie" where the defense theory of the case was that AH had a motive to lie about the abuse. *Id* at 214-215. The Oregon Court of Appeals also concluded that even assuming AH's mother's testimony had amounted to improper vouching, it would not be prejudicial due to the father's direct comment on AH's credibility that petitioner did not challenge. *Id* at 215. Although petitioner sought further review of this issue, the Oregon Supreme Court denied review. 350 Or. 130, 250 P.3d 922 (2011).

Petitioner filed a second PCR action wherein he alleged that trial counsel was ineffective for failing to object to: (1) the testimony of AH's father on the basis that it constituted an inadmissible comment on AH's credibility, and (2) AH's mother's comment on AH's credibility. He also alleged that appellate counsel failed to raise the unpreserved issue of AH's father's testimony as plain error. Respondent's Exhibit 133. The PCR trial court dismissed the case without consideration of the merits of petitioner's claims because the case was improperly successive. Respondent's Exhibit 137. The Oregon Court of Appeals affirmed that decision without opinion, and the Oregon Supreme Court denied review. Respondent's Exhibits 147 & 148.

Petitioner filed this federal habeas corpus case on August 1, 2011. With the assistance of appointed counsel, petitioner filed an Amended Petition for Writ of Habeas Corpus on February 1, 2013 which contains the following claims:

5 – FINDINGS AND RECOMMENDATION

**Ground 1**: Trial counsel erred when he failed to object, and/or preserve for appeal, when a witness made comments on the credibility of his daughter who was a complaining witness.

**Ground 2**: Trial counsel erred when he failed to effectively object and preserve for appeal that the trial court erred when it permitted a witness to comment on the credibility of her daughter who was a complaining witness.

**Ground 3:** Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when counsel failed to object to the victim's father's comment on the complainant's credibility.

**Supporting Facts**: The complainant's father stated in direct testimony that his daughter (the complainant) does not lie.

**Ground 4:** Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when counsel failed to object to the complainant's mother commenting on the victim's credibility when she testified that the victim would not make up the allegations.

**Supporting Facts:** Even if the prosecutor's question asking if the complainant's mother knew if the complainant had a motive to lie was appropriate, counsel failed to object and strike the mother's statement that the complainant would not make up the allegations. This statement is distinguishable from the mother's previous comment that she knew of no reason that the complainant would make up the allegation. Saying that there was no reason is equivalent to saying that the victim would not lie. This is inadmissible vouching. This and trial counsel's failure to object to the complainant's father's vouching testimony caused cumulative prejudice preventing petitioner from receiving a fair trial.

**Ground 5:** Petitioner was denied his Sixth and Fourteenth Amendment rights to effective assistance of counsel when appellate counsel failed to effectively argue for reversal of the trial court's error in allowing complainant's mother's vouching testimony and failed to assign error to the admission of the complainant's father's vouching testimony.

**Supporting Facts:** Appellate counsel failed to argue the full scope of the complainant's testimony which would have demonstrated that it was inadmissible vouching. Appellate counsel failed to specifically argue for reversal based upon the due process violation that occurred when the vouching testimony was admitted. Appellate counsel failed to argue for reversal of the trial court's admission of the mother's testimony on the basis of plain error. Appellate counsel failed to argue for reversal of the trial court's admission of the father's testimony on the basis of due process and plain error.

**Ground 6:** Petitioner was denied effective assistance of post-conviction counsel, trial and appellate counsel in violation of the Sixth Amendment of the United States Constitution. Petitioner's post-conviction counsel failed to raise cognizable claims including claims concerning petitioner's trial counsel errors and appellate counsel errors.

Amended Petition (#39), pp. 3-4.

Respondent asks the court to deny relief on the Amended Petition because: (1) Grounds One and Three were not fairly presented to the Oregon state courts, are now procedurally defaulted, and the default is not excused; (2) the state-court decisions denying relief on Grounds Two and Four were neither contrary to, nor unreasonable applications of, clearly

established federal law; and (3) Grounds Five and Six are
untimely because they do not relate back to any claims within the
timely filed original Petition.

**DISCUSSION**

## I.   Unargued Claims

As previously noted, petitioner raises several claims in his
Amended Petition.   In his supporting memorandum, however,
petitioner chooses to only argue Grounds Three, Four, and Five.
Petitioner does not argue the merits of his remaining claims, nor
does he address any of respondent's arguments as to why relief on
these claims should be denied.   As such, petitioner has not
carried his burden of proof with respect to these unargued
claims.[1]   *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir.
2002) (petitioner bears the burden of proving his claims).

## II.   Timeliness of Amended Petition

Respondent asserts that petitioner failed to file his
Amended Petition within the one-year statute of limitations
imposed by the Anti-terrorism and Effective Death Penalty Act
("AEDPA").   28 U.S.C. 2244(d)(1).   He recognizes that Grounds
Three and Four essentially restate Grounds One and Two, but
maintains that Ground Five of the Amended Petition is a new claim
that does not relate back to the original, timely-filed Petition
and must therefore be dismissed.

---

[1]   Grounds One and Two, which were originally pled as *pro se*
claims, appear to be entirely contained within Grounds Three and
Four as articulated by appointed counsel.   To the extent Grounds
One and Two encompass additional claims, they are unargued and
subject to dismissal based upon petitioner's failure to meet his
burden of proof.

A new claim contained in an amended habeas corpus petition filed after the expiration of the AEDPA's one-year statute of limitations will only relate back to the timely-filed pleading if the claim arises out of "the same conduct, transaction or occurrence" as a claim in the timely pleading. *Mayle v.* Felix, 545 U.S. 644 (2005). Relation back is permitted "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." *Id* at 657. If the new claim adds "a new legal theory tied to the same operative facts as those initially alleged," it will be sufficient to relate back to the original claim from the original petition.

Petitioner's Ground Five pertains to the purported failings of his appellate attorney during his direct appeal. In this respect, petitioner's new claim involves a different attorney from a different proceeding than the claims at issue in the original Petition such that Ground Five is not similar in time and type to Grounds One and Two. Petitioner does not argue that his Ground Five claim relates back to his original Petition, but instead asserts that he is entitled to equitable tolling to excuse the default as to Ground Five because: (1) federal habeas counsel believed respondent agreed, and that the court had authorized, the filing of his Amended Petition raising new claims that did not relate back to those in the original *pro se* Petition; and (2) his first PCR trial attorney failed to raise

the ineffective assistance of appellate counsel claim identified as Ground Five.

Although the Ninth Circuit has authorized equitable tolling, it is not available in most cases. Equitable tolling is appropriate when "'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'" *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Brambles v. Duncan*, 330 F.3d 1197, 1202 (9th Cir. 2003)). The Ninth Circuit has held that even an attorney's "miscalculation of the limitations period . . . and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *Miranda v. Castro*, 292 F.3d 1063, 1067 (9th Cir. 2002). *See also Lawrence v. Florida*, 127 S.Ct. 1079, 1085 (2007). Only in cases of attorney abandonment can the conduct of an attorney warrant equitable tolling. *Maples v. Thomas,* 132 S.Ct. 912, 923-24 (2012).

Petitioner filed this habeas corpus case in August 2011, and respondent filed its initial Response (#20) and accompanying Respondent's Exhibits in December of that same year. The court appointed counsel to represent petitioner and on July 31, 2012, counsel moved to stay the case to allow him to finish his second round of state PCR proceedings such that "all of his claims and evidence may be considered in this . . . first [federal] petition for writ of habeas corpus. . . ." Motion to Stay (#32), p. 2. Counsel for petitioner certified that respondent would object to the Motion to Stay. *Id*. Counsel for petitioner also filed a

Declaration indicating that respondent would object to the Motion.  Declaration of Tonia Moro (#33), p. 3.  "After further review, however, respondent withdr[ew] the objection to petitioner's motion to stay."  Response to Motion to Stay Federal Proceedings (#34), p. 2.  As a result, the court granted the unopposed Motion to Stay.

According to respondent, where it was apparent that he wished to file an amended petition following his second state PCR action, respondent's failure to file any objection constituted an implicit agreement that he would not raise any procedural objections to any amended petition.  Respondent has not represented that he does not object to, and the court has not authorized, the filing of an Amended Petition containing untimely claims.  Petitioner asked to stay this case while he continued with state PCR proceedings, respondent did not oppose the Motion to Stay, and the court allowed the unopposed Motion in a minute order.  Nothing in this history suggests that respondent believed petitioner would be allowed to pursue untimely claims, or that the court authorized the filing of such claims.

Although petitioner faults his first PCR trial attorney for not raising the ineffective assistance of appellate counsel claim contained in Ground Five of his Amended Petition, any negligence on the part of petitioner's first PCR counsel does not constitute an extraordinary circumstance warranting equitable tolling.  *See Frye, supra*.  Because Ground Five of the Amended Petition does not relate back to the claims in the original *pro se*

Petition, and as petitioner is not entitled to equitable tolling, Ground Five should be dismissed because it is untimely.[2]

## III. __Exhaustion and Procedural Default__

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). The exhaustion doctrine is designed "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

### A. __Ground Three: Father's Testimony__

As Ground Three, petitioner asserts that trial counsel was ineffective when he failed to object to AH's father's vouching testimony. Petitioner did not raise this claim until his second PCR action which was dismissed as improperly successive and untimely. Where this claim was rejected based upon an independent and adequate state procedural rule, and not considered on its merits, petitioner failed to fairly present it. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). Because the time for fairly presenting the claim passed long ago, Ground

---

[2]   Even if this claim were properly before the court, the court has examined the merits of the claim and determined that it would not entitle petitioner to relief.

Four is now procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman* 501 U.S. at 750.

Petitioner argues that the court should excuse his default pursuant to *Martinez v. Ryan*, 566 U.S. ----, 132 S.Ct. 1309, 1315 (2012), because his first PCR trial attorney was ineffective when he failed to raise the claim in the Umatilla County Circuit Court. Traditionally, the performance of PCR counsel could not be used to establish cause and prejudice to excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (only the constitutionally ineffective assistance of counsel constitutes cause); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987) (there is no constitutional right to counsel in a PCR proceeding). However, in *Martinez*, the Supreme Court found "it . . . necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." *Martinez*, 566 U.S. at 1315. It concluded, "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.*

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id* at 1320.

In order to show that the omitted claim is substantial, a petitioner must "demonstrate that the underlying ineffective assistance of trial counsel claim . . . has some merit." *Id* at 1318-19. A claim is considered "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id* at 1319. In order to make the second required showing that appointed PCR counsel was "ineffective," a petitioner "need only show that his PCR counsel performed in a deficient manner. A prisoner need not show actual prejudice resulting from his PCR counsel's deficient performance, over and above his required showing that the trial-counsel IAC claim be 'substantial' under the first *Martinez* requirement." *Detrich v. Ryan*, 740 F.3d 1237, 1245-46 (9th Cir. 2013).

Petitioner contends that PCR counsel should have raised a claim that criminal trial counsel failed to object to improper vouching testimony from AH's father. "[I]n Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton*, 294 Or. 427, 438 (1982). It is clear from the Oregon Court of Appeals' written decision during petitioner's PCR proceedings that AH's father's testimony constituted improper vouching: "Petitioner has not argued in this post-conviction proceeding that AH's *father's* testimony constituted an inadmissible comment on her credibility, to which counsel should have objected. **The father's testimony, unlike that of the mother, contains a direct comment on the credibility of AH.**" Respondent's Exhibit 120, p. 7 (italics in original, bold added).

PCR trial counsel included petitioner's challenge to AH's mother's testimony as impermissible vouching, but omitted the stronger claim pertaining to the vouching on the part of AH's father. Where the Oregon Court of Appeals has already concluded that the father's testimony constitutes direct vouching under Oregon law, and as such vouching is not permissible, this claim has "some merit" so as to be substantial under *Martinez*. As petitioner is able to excuse his procedural default as to this claim, the standard of review becomes *de novo*. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014).

### B. Ground Four: AH's Mother's Testimony

As Ground Four, petitioner asserts that trial counsel failed to challenge AH's mother's testimony on the basis that it constituted improper vouching. There is some confusion as to whether petitioner fairly presented this claim. Petitioner claims that his first PCR attorney challenged trial counsel's failure to object only to the first portion of the mother's statements pertaining to whether AH had a motive to lie, but that he neglected to also raise counsel's failure to object to the mother's statement that there was "no reason" AH would make up the allegations. He believes that the mother's statement that there was "no reason" AH would make false allegations was qualitatively different from her initial response to the prosecutor's question and runs afoul of Oregon's prohibition against vouching testimony.

A review of the record reveals that the Oregon Court of Appeals considered the entirety of this testimony:

> Q: [Did AH] ever talk to you about any fights or arguments, animosity toward Mr. Easter [or his daughter, AE]?
>
> A: No.  I know her and [AE] used to get in little fights about – because [AE] or her would want to play with a different friend or [AH] would like somebody and [AE] would be fighting with somebody or [AE] would like somebody and [AH] would be fighting with somebody.  Just stuff like that, but nothing—
>
> Q. Do you know of any reason why your daughter would make this up?
>
> A. No.
>
> [DEFENSE COUNSEL].  Your honor, objection, speculation.
>
> THE COURT.  Overruled.
>
> **The court then told the witness to go ahead, at which point she reiterated, "No, there's not," then added, "There's no reason."**

Respondent's Exhibit 120, pp. 2-3 (bold added).

This makes it clear that petitioner raised, and the Oregon Court of Appeals considered, the claim and argument he advances in this proceeding.  Where petitioner raised the same claim to the Oregon Supreme Court, Respondent's Exhibit 121, petitioner fairly presented this claim to Oregon's state courts and it is eligible for merits review.

## IV.   The Merits

### A.   Ground Three: Father's Vouching (*de novo* review)

The fact that AH's father gave testimony that included impermissible vouching does not automatically resolve the *Strickland* issues.  In order for petitioner to establish that he

is entitled to habeas corpus relief on his claim pertaining to AH's father's vouching, he must first establish that counsel's performance fell below an objective standard of reasonableness when he failed to object to the improper vouching. *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Petitioner must also demonstrate that his attorney's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694.

Both parties have introduced new evidence pertaining to this claim. Respondent offers the Declaration of Donald Scales, the trial attorney who did not object to the vouching in question. Scales offers the following rationale for his decision not to object:

> 3.   In the course of trial I will weigh and evaluate the benefit and risk of an objection in a given situation. In my experience in speaking to jurors post-trial, they have consistently expressed a belief that an objection indicates that the attorney is trying to hide something. I am conscious of that potential and the fact that I may highlight testimony by objecting to it.
>
> 4.   I do not have an independent recollection of my exact thought process as to [AH's father's] testimony, but believe

that I did not object to his statement that
his daughter does not lie, because I did not
want to draw attention to the testimony and
because I thought that the jury would
consider the statement as reflecting what all
parents would say: that their children do not
lie.

5.  I believe that I thought it was an issue
I could better address on cross-examination
or in closing argument, and did in fact
address in closing argument.  In particular,
I began closing argument by discussing the
issue of parents and their desire to believe
their children are always telling the truth.

Respondent's Exhibit 149.

Petitioner counters this new evidence with the Declaration
of Susan Reese, an attorney who focuses on criminal defense and
has practiced in Oregon for 42 years.  According to Reese:

I can think of no trial strategy in which
failure to object to vouching testimony would
be appropriate.  Trial counsel should have
objected as soon as [the father] testified,
"My daughter doesn't lie."  Instead, he
remained silent.  He allowed the expansion of
the comment to [the father's] speculative,
"why would she say something like that if it
ain't true" without objection.  He then also
remained silent when the prosecutor
emphasized the vouching by giving [the
father] a chance to repeat it. . . .

This testimony opened the door for the
prosecutor to argue, as he did, in closing
that AH must be believed, because she had no
reason to lie.  Trial counsel not only
remained silent before this highly improper
testimony, but also allowed the prosecutor
and the witness to repeat, and thus, to
highlight it for the jury.

Petitioner's Exhibit 1, p. 4.

Petitioner asserts that he was in a unique position to
suffer prejudice from counsel's error because the case amounted

to a credibility contest given the absence of any physical evidence indicating sexual abuse.[3] *See U.S. v. Necoechea,* 986 F.2d 1273, 1276 (9th Cir. 1993) (vouching especially problematic in credibility contests). He also asserts that where he was convicted by a count of 10-2 as to Count One involving AH, he was more vulnerable to prejudice than had he been convicted by a unanimous jury. Respondent's Exhibit 103, p. 270 (10-2 polling); *Simpson v. Coursey*, 224 Or. App. 145, 154 (2008) (very real possibility of prejudice from vouching with three verdicts of acquittal, and one 10-2 conviction involving the same victim). He asserts that there is no sound trial strategy in allowing AH's father's vouching testimony because an objection was the only way to preclude a jury from considering it.[4]

This case is most analogous to the recent case of *Gresser v. Franke*, --- Fed. Appx. ----, 2015 WL 6445689, which involved an Oregon man ultimately convicted of sexually abusing a 10-year-old girl by a non-unanimous jury. Two family acquaintances vouched

---

[3] Although petitioner believes there was a cumulative prejudicial effect based on counsel's failure to object to both the mother's and the father's vouching testimony, as will be discussed briefly below, the mother's testimony did not warrant an objection and therefore does not factor into the prejudice inquiry.

[4] Petitioner also asserts that where the State previously took the position that AH's father's testimony was objectionable when defending trial counsel's actions involving the mother's statements on PCR review, it should be judicially estopped from now arguing that counsel's actions with respect to AH's father were sound. The State does not appear to take inconsistent positions where it previously argued the mother's statements did not constitute vouching (which they did not), and even if they did, they were simply cumulative of other evidence that petitioner had not placed at issue. This did not amount to criticism of counsel's treatment of AH's father's testimony.

for the credibility of the victim but, as here, trial counsel did not object to the improper vouching because he "'did not want to highlight that statement for the jury by objecting.'"  In an unpublished opinion, the Ninth Circuit Court of Appeals reviewed the claim *de novo* and found that the question framed to one of the witnesses did not give counsel reasonable notice that the witness would respond with an opinion on the victim's credibility.  Accordingly, it concluded that in such a circumstance where the damaging answer had already been uttered, "whether to object to damaging testimony at the risk of drawing the jury's attention to it as a tactical decision" and that counsel's decision not to object "was a valid strategic decision." *Id* at 2.

As in *Gresser*, the initial question posed to AH's father would not reasonably lead to the conclusion that he would respond by vouching for the credibility of his daughter – the prosecutor merely asked him to describe AH's demeanor as she disclosed the abuse.  Respondent's Exhibit 103, p. 158.  While the prosecutor asked a follow-up question designed to highlight the comment on credibility, any objection could have emphasized the point even more where the vouching had already occurred.  In addition, this case involved a multi-day trial where the jury had the opportunity to evaluate the credibility of AH during live testimony in court.  Presumably, this would have carried more weight than AH's own father stating that his daughter does not lie.

Moreover, trial counsel in the case at bar addressed the vouching issue at the very outset of his closing argument, noting that "As a father, I want to believe that my kids are always telling the truth[,]" but that children lie "enough that it concerns us." Respondent's Exhibit 103, p. 243. This supports his contention that his lack of objection was predicated upon strategic thinking rather than his having "no understanding or appreciation of the law prohibiting vouching testimony. . . ." as opined by Susan Reese. Petitioner's Exhibit 1, p. 4.

Finally, unlike *Gresser* which involved improper vouching by two family acquaintances, the improper vouching in this case involved the victim's father, something counsel found to be important based on his belief that all parents would testify that their children do not lie. Respondent's Exhibit 149, p. 2. It is more likely that a jury would lend more weight to vouching testimony by family acquaintances of a victim than by the victim's own parent who would presumably view his own child in the best light possible. For all of these reasons, and upon an independent review of the record and a *de novo* review of petitioner's Ground Three claim, the court should deny habeas corpus relief on this claim because counsel's decision not to object was a permissible strategic one, and any error by counsel did not prejudice petitioner.

**B.** **Ground Four: Mother's Vouching (deferential review)**

In his remaining claim, petitioner alleges that trial counsel was constitutionally ineffective when he failed to object to AH's mother's testimony because it constituted improper

vouching under Oregon law.  Where petitioner fairly presented this issue to the Oregon state courts, he will not prevail in this habeas action unless the Oregon Court of Appeals' adjudication of the claim was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.  *Id* at 410.  The state court's

application of clearly established law must be objectively unreasonable. *Id* at 409.

Although petitioner believes AH's mother's testimony amounted to improper vouching under Oregon law thereby requiring a commensurate objection from trial counsel, the Oregon Court of Appeals considered the totality of the testimony at issue and determined that it did not rise to the level of improper vouching under Oregon law. Respondent's Exhibit 121. Such a decision is binding on this court. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir.) As a result, counsel was under no duty to object, and the Oregon Court of Appeals' decision denying relief on the ineffective assistance of counsel claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

**V.    Motion for Hearing (#105)**

Petitioner has a pending Motion for Hearing, Discovery and for Expansion of the Record (#105). Subsequent to the filing of this Motion, the court allowed petitioner extraordinary expenses to develop new evidence leading to the Reese Declaration referenced above. Because both parties have had an opportunity to develop the record, and as further development of the record is unnecessary to the resolution of this action, the court should deny petitioner's Motion insofar as it seeks a hearing to develop additional evidence. *See Schriro v. Landrigan*, 127 S.Ct. 1933,

1940 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing).

### RECOMMENDATION

For the reasons identified above, petitioner's Motion for Hearing (#105) should be denied, the Amended Petition for Writ of Habeas Corpus (#39) should be denied, and a judgment should be entered dismissing this case with prejudice. The court should, however, issue a Certificate of Appealability as to whether petitioner was denied his right to the effective assistance of counsel.

### SCHEDULING ORDER

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 17 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of January, 2016.

/s/John Jelderks_____
John Jelderks
United States Magistrate Judge